Filed 5/14/15  In re T.H. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re T.H., a Person Coming Under the Juvenile Court Law. | H041342 (Santa Clara County Super. Ct. No. JD21486) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. S.H., Defendant and Appellant. | |

The biological father of T.H. appeals the juvenile court's order terminating his parental rights and denying his Welfare and Institutions Code section 388 modification petition seeking reunification services.  He argues that trial counsel was ineffective by failing to press the court for a presumed parent determination or argue for reunification services under Welfare and Institutions Code section 361.5, subdivision (a)(4).[1]  For the reasons stated here, we will affirm the order.

---

[1]  Unspecified statutory references are to the Welfare and Institutions Code. Unspecified subdivision references are to section 361.5.

1

# I.  TRIAL COURT PROCEEDINGS

## A.    BACKGROUND

Appellant was incarcerated in October 2011 when his third child, T.H., was born. Juvenile dependency proceedings commenced a year later, prompted by T.H's maternal grandmother's guardianship request opposed by T.H.'s mother.  At the October 31, 2012 initial hearing, the court authorized placement of T.H. with the maternal grandmother, who had been caring for her since birth.  The maternal grandmother was the legal guardian of T.H.'s older sibling and two older half siblings.

In October 2012 the Santa Clara County Department of Family and Children's Services (Department) filed a dependency petition listing appellant, who had never been married to T.H.'s mother, as the alleged father.  Appellant, incarcerated for a controlled substance offense, was given notice and waived his right to attend the November 2012 jurisdiction/disposition hearing.  He did not check the box on the waiver form requesting counsel.  Mother, with a history of methamphetamine abuse, received reunification services at that hearing, and a six-month review was set for May 2013.  Appellant also waived his appearance at the May hearing, but he requested counsel who appeared on his behalf and received a short continuance.  Appellant did not appear at the next hearing in June 2013 even though he had been released from prison.  The matter was continued by T.H.'s counsel for an early resolution conference.

Appellant made his first personal appearance in this case in July 2013 to request paternity testing.  Appellant did not request reunification services at that time, and the matter was reset for paternity results and a contested six-month hearing.  According to the Department's July 15 addendum report, the social worker had informed appellant before that hearing that he would be recommending termination of mother's reunification services.  Based on a positive genetic test, in September 2013 the court declared appellant T.H.'s biological father.  Appellant was not present at that hearing and his attorney did

not seek reunification services at that time. However, appellant was granted a continuance to file an unspecified motion.

In an addendum report filed at the September 2013 hearing, the social worker reported that appellant was in New Jersey with family for personal reasons, and, although he would like to have T.H. and her brother in his care when his living situation stabilized, he was comfortable with his children living with their maternal grandmother at that time. The social worker did not recommend reunification services for appellant given his lack of a significant relationship with T.H. and the stable and nurturing family life T.H. was enjoying with her grandmother and siblings.

At the six-month review hearing, eventually held in October 2013, the court terminated mother's family reunification services and scheduled a section 366.26 selection and implementation hearing for February 2014.[2] Appellant requested that T.H. either be returned to him or placed with him with services, but the request was denied because appellant had not filed a section 388 petition.[3] On January 23, 2014, this court issued a writ of mandate finding that the juvenile court erred in not entertaining appellant's reunification services request at the October 2013 hearing, and directing the court to rule on appellant's request before proceeding to a section 366.26 hearing. On March 5, 2014, the juvenile court denied appellant's request and reset the section 366.26 hearing.

---

[2] The July and September addendum reports were admitted into evidence at that time.

[3] Section 388 allows a parent to petition the juvenile court to change, modify, or set aside any previous order in a dependency action based on changed circumstances. A section 388 petition is the proper mechanism for a parent to request reunification services after a section 366.26 permanency hearing has been scheduled. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 454-455.)

**B. APPELLANT'S 2014 SECTION 388 MODIFICATION PETITION**

**1. The Parties' Positions**

On April 28, 2014, appellant filed a section 388 petition to modify the March 5 order. Appellant asked the court to order reunification services or place T.H. in his care on a family maintenance plan. According to the petition, appellant had obtained stable employment and housing, successfully completed probation, and established a relationship with T.H. whom he was prepared to parent.

At the June 6, 2014 hearing on appellant's petition, the Department pressed that appellant, as the biological father, was not (and had never been) entitled to reunification services as a matter of right under section 361.5, subdivision (a). Appellant countered by claiming that he had elevated his status over the last several months to that of a presumed father entitling him to reunification services, and that those services could be provided after the 18-month review date by continuing the matter under section 352. Counsel for T.H. interjected that section 352 required a finding that any continuance be in the child's best interest regardless of appellant's legal status, and it was not in T.H.'s best interest to delay the permanency determination. The court noted that "the law [is] pretty clear in this area," that "we're past the 18 months, and so it's either return or move on."

The parties agreed that evidence received in connection with the section 388 petition could also be used for the trailing section 366.26 selection and implementation hearing.

**2. Testimony**

**a. Appellant**

Appellant testified that he was arrested in July 2011 and served a 23 month prison sentence. In addition to T.H., appellant had two sons, ages 7 and 13. Appellant described a "great relationship" with his children, but he was unaware that his 13-year-old son had recent suicidal thoughts. Appellant had refrained from criminal activity since his June 2013 release. He had successfully completed probation, obtained a job and a

stable residence, and had taken self help and computer classes. He met a woman about seven months before the hearing and had moved into her apartment, and they did not intend to break up.

Appellant received newborn pictures of T.H. while he was incarcerated. He called the maternal grandmother often to speak with his daughter, who he met the day he was released. He waived his appearance at the November 2012 jurisdiction/disposition hearing and the May 2013 six-month review hearing to avoid having to extend the length of his incarceration. He did not understand the import of the hearings, nor did he check the box requesting counsel on the November 2012 waiver form. He secured an attorney just before his release.

Appellant described several visits with T.H., including overnight visits, initially at his mother's home but three at his girlfriend's apartment after his mother passed away in October 2013. He attributed the lack of visits in March and April 2014 to the material grandmother's inflexibility. He had family support and he was prepared to care for his daughter full time.

The wife of appellant's brother also testified that appellant had been getting himself "back on track" in recent months, and that she had observed an affectionate relationship between appellant and T.H.

### b. Social Worker Pham

Department social worker Joseph Pham testified as an expert in risk assessment and placement in dependency cases. Pham facilitated appellant's visit with T.H. in May 2014. T.H. called appellant "Daddy" and enjoyed playing with him. Pham did not observe a parent-child relationship but rather a friendly visit from someone who initiated most of the affection. Appellant reported more visits with T.H. than the maternal grandmother acknowledged, including the overnight visits after appellant's mother passed away, and Pham did not know which version of events was accurate.

5

Pham testified that T.H. had been living with her siblings in her grandmother's home nearly her entire life. She was healthy and thriving in her grandmother's care. Although appellant had taken positive steps since his release, his criminal history, including firearm, controlled substance, and domestic violence offenses, remained a serious concern and factored heavily into his opinion that T.H. should remain with her grandmother.

In a May 21 interim review report, Pham noted that appellant's adolescent son had expressed suicidal thoughts. The boy had been living with his paternal grandmother until she passed away and was currently living with his mother who, recently released from jail, had a history of mental illness and drug abuse. Pham expressed concern that appellant did not feel the need to contact his emotionally unstable son, and he had a broader concern that appellant had been unable to care for either son. The report also noted that appellant's girlfriend had a pending dependency action involving her three children who did not live with her.

### c. The Maternal Grandmother

The maternal grandmother testified that she typically had initiated visits between T.H. and the paternal family, and had provided the transportation for those visits. Appellant declined an offer to visit T.H. on one occasion because he was busy celebrating his own birthday. He had never provided financial support for T.H. or for his older son also in her care. The maternal grandmother remained committed to adopting T.H., but she was not opposed to T.H. and appellant having a relationship.

### d. Social Worker Chung

Social worker Nora Chung testified on behalf of T.H. as an expert in risk assessment, placement, and reunification services for dependent children. Chung considered T.H.'s attachment needs, her relationship with her grandmother and her siblings, her relationship with appellant, and appellant's current circumstances to conclude that T.H.'s best interest would not be served by placing her with appellant. In

Chung's opinion, T.H. was securely attached to the maternal grandmother, who was fully meeting T.H.'s physical and emotional needs. T.H. also was part of a family system, having bonded with the three siblings with whom she also resided. T.H. viewed her maternal grandmother, not appellant, as her psychological parent. Chung observed appellant struggling to correctly read T.H.'s cues during a recent visit, and he had never demonstrated a commitment to parenting his two older children. Chung did not feel permanency should be delayed under the circumstances.

### 3. Closing Argument and Disposition

Appellant's counsel urged that T.H.'s best interest would be served by placing her with appellant or providing appellant with family reunification services. Counsel argued that appellant had elevated himself to a presumed father by taking T.H. into his home and holding her out as his daughter, and that he was ready, willing, and able to care for her. She noted that anytime before the section 366.26 hearing, even after the reunification period had ended, changed circumstances can justify a placement change, and father had met that burden. Counsel acknowledged that once reunification services terminate, focus shifts to the child's need for permanency and stability, and she argued that T.H's needs would be met by placing her with appellant. Counsel asked that T.H. be returned to appellant's care, or alternatively that the section 366.26 hearing be continued under section 352 to provide for reunification services.

On June 9, 2014, the court denied appellant's modification petition. In its oral pronouncement, it observed: "[T]he Court is mindful that we are at the 18-month date of the taking into protective custody, so there is no provision in the law that would allow this Court to extend services for additional time. The statute is very clear with respect to time lines." The court denied appellant's request for placement as not being in T.H.'s best interest, persuaded by social worker Chung's testimony. The court adopted the Department's recommendations, terminated mother's and appellant's parental rights, and freed T.H. for adoption by her maternal grandmother.

7

## II. DISCUSSION

**A. LEGAL FRAMEWORK**

### 1. Family Reunification Services

Section 361.5 identifies eligible recipients of family reunification services in dependency proceedings. Subdivision (a) directs the juvenile court to provide reunification services to a dependent child's mother and statutorily presumed father or guardian. A man who has held the child out as his own and received the child into his home is a "presumed father." (Fam. Code, § 7611, subd. (d).) In contrast, biological fathers are not entitled to reunification services as a matter of right, but only if the court determines that services will benefit the child. (§ 361.5, subd. (a).)

Section 361.5 also sets reunification timeframes. For a child under the age of three such as T.H., services are to be provided for a minimum of six months but not more than 12 months from the jurisdictional hearing. (§§ 361.5, subd. (a)(1)(B); 361.49.) Subdivision (a)(3) allows reunification services to be "extended up to a maximum time period not to exceed 18 months after the child was removed" if reasonable services have not been provided or a substantial probability exists that the child will be returned to a parent within the extended time period. (§ 361.5, subd. (a)(3).) Reunification services are terminated at a section 366.22 permanency hearing, when the child is either returned to her parent or legal guardian, or a selection and implementation hearing is set under section 366.26. (§ 366.22, subd. (a).)

In 2008 the Legislature amended section 361.5 to provide for postponement of a permanency hearing and extension of reunification services, but only in narrowly prescribed circumstances. (Stats. 2008, ch. 482, § 3, pp. 2807-2809.) Reunification services may be extended up to 24 months if the permanent plan for the child is to be returned and safely maintained in the home within that time period (§ 361.5, subd. (a)(4)), but only after a hearing under section 366.22, subdivision (b). That provision (also added in 2008) limits continuances to cases involving a parent or guardian recently

released from incarceration and making significant and consistent progress to establish a safe home for the child's return, or a parent making significant and consistent progress in a substance abuse treatment program, and the court must find by clear and convincing evidence that the child's best interest would be met by providing the additional reunification services. (§ 366.22, subd. (b).) The court must also find that the parent (1) "has consistently and regularly contacted and visited with the child," (2) "has made significant and consistent progress in the prior 18 months in resolving problems that led to the child's removal," and (3) has the capacity and the ability to complete the substance abuse treatment or post-incarceration treatment plan. (§ 366.22, subd. (b)(1)-(3).)

Section 352 governs continuances of dependency hearings. Section 352, subdivision (a) prohibits continuances contrary to the child's interest. In considering the child's interests, the court must give substantial weight to a child's need for a stable environment and prompt resolution of custody status. (§ 352, subd. (a).)

### 2. Ineffective Assistance of Counsel

All parties to a dependency proceeding are entitled to competent counsel. (§ 317.5.) A parent alleging ineffective assistance of dependency counsel must show that counsel failed to act in a manner to be expected of reasonably competent attorneys who practice dependency law. (*In re Kristin H*. (1996) 46 Cal.App.4th 1635, 1667-1668.) We assume that counsel's performance was not deficient when it could have been based on a tactical decision. (*In re Arturo A*. (1992) 8 Cal.App.4th 229, 243.) Nor is counsel ineffective by failing to undertake idle acts or press meritless arguments. (See *In re Joshua M*. (1997) 56 Cal.App.4th 801, 808-810.) To prevail on an ineffective assistance claim, the parent also must show prejudice-a reasonable probability that, but for counsel's failure to act, a different outcome more favorable to the parent would have resulted. (*In re Kristin H*., at p. 1668.)

9

**B.**     **ANALYSIS**

Appellant argues that his dependency counsel rendered ineffective assistance by not insisting that the juvenile court make a presumed parent finding at the section 388 modification hearing. At the outset, we do not agree with appellant's underlying legal position that he would have been statutorily entitled to reunification services had the court deemed him a presumed father. Appellant cites an excerpt from subdivision (a)(4), as "authoriz[ing] an additional period of six months when 'reasonable services have not been provided to the parent.' " But that clause cannot be read in isolation. Section 361.5 contemplates that reunification services will start when the child is removed and will continue only so long as the permanent plan for the child is to be returned and safely maintained in the home within the extended time period. (§ 361.5, subd. (a)-(b).) Here, reunification services terminated after 11 months when the court concluded that there was not a substantial probability that T.H. would be returned to her parents within another six months. Appellant had not achieved presumed father status before reunification services terminated, so he was not entitled to services as a matter of right under section 361.5 when he filed his section 388 modification petition. (*In re Zacharia D.*, *supra*, 6 Cal.4th at p. 453.)

Further, court-ordered reunification services can only be extended under subdivision (a)(4) after the 18-month mark if the court grants a continuance under section 366.22, subdivision (b). That subdivision-authorizing a court to continue a permanency hearing up to six months provided the hearing occurs within 24 months after the child's original removal-requires a showing by clear and convincing evidence that additional reunification services would be in the child's best interest. Section 352, governing dependency hearing continuances generally, also requires the court to consider the child's interest, and in particular to give substantial weight to a child's need for a stable environment and a prompt custody status resolution. (§ 352, subd. (a).)

10

After 18 months have passed and the court has terminated reunification services, the statutory scheme requires the juvenile court to consider the child's best interest when ruling on a father's request for reunification services, whether he is the biological father or a newly designated presumed father. Counsel therefore did not perform deficiently by arguing T.H's best interest instead of pressing for a determination of appellant's status.

Appellant also argues that trial counsel was ineffective by arguing for reunification services under section 352 instead of under the more specific subdivision (a)(4). But, as we have explained, an extension of services under subdivision (a)(4) requires reunification as the anticipated permanency plan. It also requires that the permanency hearing be continued under section 366.22, subdivision (b), which requires a showing that the continuance be in the child's best interest. Appellant suggests that the juvenile court was unaware of subdivision (a)(4), but the court may have been of the mind that it simply did not apply. Even if we assume that the court was unaware of the 2008 amendments to sections 361.5 and 366.22, it is clear from the record that the court did not consider reunification services at this late date to be in T.H.'s best interest. Accordingly, appellant cannot show a reasonable probability of a more favorable outcome had he expressly invoked subdivision (a)(4) instead of section 352. (*In re Kristin H.*, *supra*, 46 Cal.App.4th at p. 1668.)

### III. DISPOSITION

The June 9, 2014 order is affirmed.

11

_____

Grover, J.

**WE CONCUR:**

_____

Rushing, P.J.

_____

Márquez, J.